UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICKY ORTA, 02-B-0612

    Petitioner,

       -v-                                  05-CV-0645(MAT)
                                                    **ORDER**

ISRAEL RIVERA, Superintendent of
Wende Correctional Facility

    Respondent.

---

## I.   Introduction

Petitioner Ricky Orta ("Orta" or "petitioner") has filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

## II.   Background

Following a jury trial in Monroe County Court before Judge Donald Mark, petitioner was convicted of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]) on March 12, 2002. Orta had also been charged with, but acquitted of "depraved indifference" murder in the second degree (N.Y. Penal Law § 125.25[2]). He was sentenced to twenty-five years to life for the murder count and five to fifteen years for the weapons count to run concurrently to one another.

---

[1] This matter has been re-assigned to the undersigned.

The conviction stems from an incident that occurred outside of 26 Joseph Place in the City of Rochester, sometime after 9:00 p.m. on the evening of April 16, 2001. The victim, Samuel "Tiger" Bronson ("Tiger") and his close friend, Corey Becoats ("Becoats") drove to 26 Joseph Place where another friend, Orlando Santiago ("Santiago") was "hanging around". T. 580.[2] Meanwhile, Orta (Santiago's cousin) was visiting with his grandmother at 54 Joseph Place. T. 654. Orta decided to also visit his aunt that night, who lived at 40 Joseph Place. While walking down the street to his aunt's house, Orta was confronted by Tiger and Becoats, who called Orta a "snitch" and repeatedly threatened to kill Orta, according to Orta's testimony at trial.[3] T. 655-656. Orta continued on to his aunt's house, where he decided to stay for a while and watch television. While at his aunt's house, the petitioner saw his cousin, Santiago, outside of house number 26 on Joseph Place. Santiago called Orta to come over. T. 656-657. When Orta went inside 26 Joseph Street, he saw Tiger and Becoats, who had in their possession Orta's witness statements from Samuel Leflore's murder case. Orta and Tiger began to argue about the statements, and, sometime thereafter, Orta shot and killed Tiger outside the hangout

---

[2] Citations to "T.__" refer to the trial transcript.

[3] The contention between Tiger and Orta arose out of a murder that occurred on December 11, 2000, where a man was shot outside of a nightclub in the Rochester suburb of Greece. Samuel Leflore and Ricky Orta fled from the scene in a car together, but only Leflore was convicted and Orta was never charged with a crime in connection with the shooting. People v. Leflore, 303 A.D.2d 1041 (4th Dept. 2003). Orta provided a statement to the Greece Police Department implicating Leflore in the murder, who was close friends with Tiger Bronson.

2

where a group of people were gathered. T. 325-331, 370-373, 584, 660-667.

### A. Testimony of Ricky Orta

At trial, the petitioner testified in his own defense. On direct examination, Orta testified that Tiger was armed with a revolver during the altercation inside 26 Joseph Place. According to the petitioner, Tiger proceeded to "grab" Orta and as the two men struggled, Orta pushed Tiger's hand down, causing the gun to be fired through the floor. Orta then tried to run from the house, only to be obstructed by Santiago, whom he was also able to fight off. Orta fled into the street with Tiger following him. T. 661-663.

Orta then testified that Tiger fired his gun at Orta twice. T. 665. By happenstance, a friend of Orta's, Mario Rivera, was in a parked car in front of 26 Joseph Place. He "passed [Orta] a gun" and the petitioner then "shot back for [Tiger] to stop coming toward my way." He could not remember how many times he shot at Tiger, but did so out of fear that he would be killed, as Tiger had threatened Orta's life six or seven times that day. T. 666-667. Orta acknowledged that Tiger was "in effect, running away" when he fired the last few shots. T. 688. After the shooting, Orta left with Mario Rivera. T. 667.

### B. Testimony of Orlando Santiago

Santiago recounted a different version of events for the prosecution. He testified that while Tiger and Orta were engaged

3

in a heated argument in the kitchen of 26 Joseph Place, Orta banged a glass table with the butt of a black 9 millimeter handgun that he was holding. T.585. Santiago then joined the argument, blaming Orta for the damage to the table and for "disrespecting the house." T.587. During the course of the quarrel, the handgun was fired, Santiago believed by accident, while Orta was pointing it at the floor. T. 588. According to Santiago, Orta was the only person present that was armed with a weapon. T. 586. Santiago proceeded to leave the house and was across the street when he saw Orta emerge with Tiger and Becoats. Santiago heard gunshots, and in looking back toward 26 Joseph Place, saw Orta standing near the front gate firing "maybe four or five shots" at Tiger while Tiger retreated. Orta then hopped into Mario Rivera's car and fled. T. 590-596.

### C. Procedural History

Orta appealed his conviction to the Appellate Division, Fourth Department, which affirmed his conviction. People v. Orta, 12 A.D.3d 1147 (4th Dept. 2004). The New York Court of Appeals denied leave to appeal on February 28, 2005. People v. Orta, 4 N.Y.3d 801 (2005). Petitioner then filed an initial petition for a writ of habeas corpus in this Court containing three claims for relief: 1) that the verdict of intentional murder was against the weight of the evidence; 2) improperly admitted hearsay evidence by the prosecution; and 3) the petitioner was impermissibly cross-examined by the prosecution. Petition ("Pet.") ¶ 22. (Dkt. #1). Orta then

4

filed a motion to stay or hold his habeas petition in abeyance so that he could exhaust two additional claims in state court. (Dkt. #12). Along with the motion to hold the petition in abeyance, petitioner filed an amended petition which raised the two claims he sought to exhaust in state court: 1) that the prosecution improperly charged both intentional and depraved indifference murder, which fundamentally deprived the petitioner of his right to a fair trial; and 2) ineffective assistance of trial counsel. (Dkt. #12-2, Grounds Four and Five).[4] On November 5, 2007, this Court ordered the petition and the motion to amend the petition stayed and dismissed grounds four and five without prejudice to allow an opportunity for petitioner to exhaust these claims in state court. (Dkt. #18).

On April 18, 2006, Orta filed a motion to vacate his judgment of conviction in Monroe County Court pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10. The petitioner's C.P.L. § 440.10 motion was summarily denied by the state court on procedural grounds. See State Court Records submitted 10/24/08, Appx. C. Leave to appeal the decision was then denied by the Appellate Division, Fourth Department on June 8, 2007. Id., Appx. F. Orta then returned to this Court, requesting that the prior stay be vacated and the claims previously dismissed be reinstated. (Dkt. #19). In an order dated August 9, 2008, petitioner's request was

---

[4] After the filing of the motion to hold the petition in abeyance and amended petition, this Court directed that the amended petition be construed as a motion to amend the petition, see Fed.R.Civ.P.15(a). (Dkt. #13).

5

granted, the stay was vacated, and grounds four and five of the amended petition were reinstated. (Dkt. #21). Respondent has submitted an Answer and Memorandum of Law arguing for the denial of the writ on procedural grounds as well as on the merits. (Dkt. #8, #26, #27).

For the following reasons, the petition is dismissed.

### III. Discussion

#### A. Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

Federal courts will be procedurally defaulted from habeas review of a "question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment . . . whether the state law ground is substantive or procedural." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (describing the "adequate and independent state grounds" doctrine); see Harris v. Reed, 489 U.S. 255, 261 (1989). The bar on habeas review resulting from a procedural default applies even where the state court issues an alternative holding addressing a procedurally defaulted claim on the merits. See, e.g., Harris, 489 U.S. at 264 n.10; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (*per curiam*). If the petitioner can "show both cause and prejudice, or a fundamental miscarriage of justice," however, federal court review may be allowed. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000).

**B.  The Habeas Petition**

**1.  Weight of the Evidence**

Orta contends that his conviction of second-degree murder was against the weight of the evidence due to "significant weakness [sic] in the People's proof that Petitioner killed Tiger without justification." Amended Pet. ¶ 22(A), Attach., Ground One. The respondent, in his memorandum of law, contends that "federal habeas relief is not available to a petitioner challenging his state court conviction on this ground." Respondent's ("Resp't") Mem at

6 (citing Soto v. LeFevre, 651 F.Supp. 588, 592 (S.D.N.Y. 1986)(internal citations omitted)) (Dkt. #8). Weight of the evidence claims derive from C.P.L. § 470.15[5], which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15[5]; see also People v. Bleakley, 69 N.Y.2d 490, 495. Because Orta's weight of the evidence claim is grounded solely in New York State's criminal procedure statute, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Therefore, the Court finds that it must be dismissed on the basis that is not a federal constitutional issue amenable to review in this federal habeas proceeding. Accord, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922).

To the extent that Orta raises a "sufficiency-of-the-evidence" claim, habeas relief still would not be warranted.[5] A petitioner who challenges the sufficiency of the evidence to support his conviction bears a "very heavy burden." Knapp v.

---

[5] In keeping with the principle that complaints of pro se petitioners are to be considered liberally in their favor, Haines v. Kerner, 404 U.S. 519, 520 (1972), some habeas courts have construed weight-of-the-evidence claims as insufficiency-of-the-evidence claims. E.g., Davis v. McLaughlin, 122 F.Supp.2d 437, 441 (S.D.N.Y. 2000) (treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim).

Leonardo, 46 F.3d 170, 178 (2d Cir.), cert. denied, 514 U.S. 1136 (1995). A conviction will be found to be supported by sufficient evidence if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). On habeas review, a court is not permitted to "'make its own subjective determination of guilt or innocence.'" Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)). It is well settled that the jury is exclusively responsible for determining a witness's credibility. United States v. Strauss, 999 F.2d at 696 (2d Cir. 1993) (citations omitted). Where there is conflicting testimony at trial, the reviewing court "'defer[s] to the jury's resolution of the witnesses' credibility.'" United States v. Autuori, 212 F.3d 105, 118 (2d Cir. 2000) (quoting United States v. Payton, 159 F.3d 49, 56 (2d Cir.1998)). Thus, a reviewing court is not permitted to reassess the fact-specific credibility judgments by juries or weigh conflicting testimony. See United States v. Giraldo, 80 F.3d 667, 673 (2d Cir.) ("The weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal."), cert. denied, 519 U.S. 847 (1996); see also Jackson v. Virginia, 443 U.S. at 318-19.

There is no dispute that on April 16, 2001, the petitioner shot and killed Tiger Bronson outside of 26 Joseph Place in the City of Rochester. Three eyewitnesses identified Orta, who admitted the killing but claimed that it was in self-defense. T. 682. Santiago, Orta's cousin, heard gunshots and observed Orta fire "four or five" shots at Tiger. T. 593. The shooting was also witnessed by Pamela Tucker and Melinda Holmes, sisters who lived at 30 Joseph Place. Holmes heard a "commotion" and went outside of her house, where she saw Tiger and Orta arguing. T. 384. As far as she could see, Tiger did not have any weapon nor did he try to strike Orta with his hands. T. 375-376. Holmes approached Tiger and attempted to persuade him to disengage. He appeared to acquiesce, but Orta drew his gun and fired what Holmes recalled as "seven shots." The first two hit Tiger in the chest, and he "started to turn and run," at which point Holmes became frightened and ran across the street as she heard the sounds of more gunshots. Holmes then observed Orta get into a tan car and drive off. T. 372-374.[6]

Tucker also heard the commotion, but did not leave the house. When she looked outside, she saw a number of people, including Tiger and Orta (but not her sister) outside and across the street. She saw Tiger and Orta in conversation. Orta was holding a piece of paper and Tiger's hands were outstretched with nothing in them.

---

[6] Both Santiago and Holmes acknowledged on cross-examination that they each had extensive criminal histories.

10

Tucker saw a spark come from inside Orta's jacket and heard gunfire. She counted seven shots. T. 325-329.

Outside of 26 Joseph Place, Rochester police recovered seven 9-millimeter shell casings and a cover letter from the District Attorney's Office to Leflore's lawyer, along with all the witnesses' statements mentioned in it – except that of Ricky Orta. T. 434-439, 500-504, 539-544, 558-562, 596, 618-631. The broken glass table was also noted. T. 540. No weapon was recovered from the driveway where Tiger was shot, and no gun was found on Tiger's body by medical personnel. T. 297, 401, 410, 419, 437.

The outcome of this case was left to the jury to choose whether to believe the prosecution witnesses' version of events or to believe the version offered by the defense. Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981). The witnesses' descriptions of the shooting were essentially consistent with each other. Although the defense raised credibility issues with respect to the testimony of eyewitnesses Santiago and Holmes, the jury nonetheless was entitled to credit the testimony of the prosecution's witnesses, which this Court may not second guess the jury's determination of a witness's credibility. See, United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006).

On the present record, Orta has not borne the "heavy burden" required to successfully mount a habeas challenge to the legal sufficiency of the evidence supporting his conviction. Accordingly, Orta's first claim is dismissed.

## 2. Improper Introduction of Hearsay Testimony

Petitioner's second ground claims that his due process right to a fair trial was violated when hearsay evidence was improperly admitted at trial. Amended Petition ¶ 22(B), Attach., Ground Two. Specifically, Orta claims that over defense counsel's objections, the court allowed two police officers who responded to the scene of the shooting to testify to an out-of-court declaration of a purported witness.[7] Orta raised this issue on direct appeal to the Appellate Division, Fourth Department, arguing that the evidence did not show that the declarant was so overwhelmed with nervous excitement that she was incapable of reflection and fabrication. See People v. Johnson, 1 N.Y.3d 302 (2003). The Appellate Division held that the testimony of the police officers concerning the statements at the scene shortly after the shooting was admissible under the excited utterance exception to hearsay. People v. Orta, 12 A.D.3d 1147 (4th Dept. 2004)("The court properly determined that the declarant's statements were made while under the stress and excitement caused by an external event, and were not the product of studied reflection and possible fabrication.")(internal citations and quotations omitted).

In general, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable in a habeas corpus petition. Crane v. Kentucky, 476

---

[7] The officers testified that they had heard a woman who fit the description of Pamela Tucker, tell Jessie Orta that Ricky Orta had shot Tiger. T. 300-301, 320, 391.

12

U.S. 683, 689 (1986). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fair trial. United States v. Agurs, 427 U.S. 97, 108 (1976). Because the Appellate Division determined that there was no error of state evidentiary law, there is no error that would rise to a constitutional infirmity. The fact that there was no error of federal constitutional magnitude precludes habeas review of this claim. See Estelle v. McGuire, 502 U.S. 62, 68, (1991).

Insofar as Orta attempts to raise a violation of the Confrontation Clause under Crawford v. Washington, 541 U.S. 36 (2004), this argument lacks merit. In Crawford, 541 U.S. at 55, 68, the Supreme Court held that testimonial hearsay is barred by the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant regarding the statement. The holding in Crawford is inapplicable to Orta's case, however, because the declarant, Pamela Tucker, testified for the prosecution at trial and was available for cross-examination. See id. at 53-57. Because Tucker testified at trial and was subject to cross-examination, the admission of the statements into evidence did not violate the Confrontation Clause or the Supreme Court's ruling in Crawford. This claim is dismissed.

### 3. Impermissible Cross-Examination

Ground three of Orta's petition claims that his rights against self-incrimination were violated when the prosecution improperly cross-examined him about his failure to complain to the police about Tiger's previous threats against him. Amended Petition ¶ 22(C), Attach., Ground Three; see T. 675. When raised on direct appeal, the Appellate Division, Fourth Department found the claim to be unpreserved for review pursuant to New York's "contemporaneous objection rule".[8] People v. Orta, 12 A.D.3d 1147 (4th Dept. 2004). Respondent contends that in dismissing this claim, the Appellate Division invoked a procedural bar based on an adequate and independent state procedural ground, thus barring this Court from reviewing the claim for habeas relief. See Resp't. Mem. at 10 (Dkt. #8). The Court agrees with Respondent's contention, as it is well-settled that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground [for dismissing a claim], even where the state court has also ruled in the alternative on the merits of the federal claim." See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). Here, the Appellate Division relied on New

---

[8] C.P.L. § 470.05(2) specifies that "[for] purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal." C.P.L. § 470.05(2); see also Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003).

York's contemporaneous objection rule to hold that Orta had failed to object and preserve his argument that he was denied a fair trial because the prosecutor cross-examined him about Tiger's prior threats, which clearly demonstrates that the petitioner's claim was unpreserved and rested on a state procedural rule.

Although the Court may reach Orta's unpreserved claim despite the procedural default if he can demonstrate cause and prejudice, Orta has not made a showing of either. Orta's claim that he was impermissibly cross-examined by the prosecution is procedurally barred from habeas review and is dismissed.

### 4. Grounds Four and Five of the Petition are Procedurally Barred

The title of the fourth ground of Orta's petition reads, "The prosecution misrepresented the offense charged, which deprived the petitioner the right to a fair trial." Amended Pet. ¶ 22(D), Attach., Ground Four. In the body of his argument, Orta alleges that the "twin count indictment" of intentional murder and depraved indifference murder violated his right to due process because the evidence was insufficient to prove intentional conduct. Orta's fifth and final claim in the Amended Petition alleges that his trial court counsel was ineffective for failing to raise the twin-theory indictment issue in Ground Four. Amended Pet. ¶ 22(D), Attach., Ground Five.

Orta raised both of these claims in a post-conviction C.P.L. § 440.10 motion in Monroe County Court. Relying on the procedural bar set forth in C.P.L. § 440.10(2)(c), the state court summarily

15

denied denied Orta's motion, holding, "[t]he Court agrees with the people that defendant's asserted claims could have been raised on direct appeal. As such, defendant's motion is subject to summary denial." See State Court Records submitted 10/24/08, Appx. C. The provision for summary denial in § 440.10(2)(c) has been held to constitute and adequate and independent state ground, giving rise to a procedural default. See Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Aparicio v. Artuz, 269 F.3d 78 (2d Cir. 2001). Accordingly, these claims are procedurally defaulted.

Moreover, the petitioner has not demonstrated cause that would excuse his failure to raise this issue in his direct appeal, nor has he shown prejudice attributable thereto. Similarly, Orta has not made a showing of actual innocence, which is necessary in order to establish there would be a fundamental miscarriage of justice if the Court fails to consider the merits of the claim. See, e.g., Calderon v. Thompson, 523 U.S. 538, 559 (1998); accord Murray v. Carrier, 477 U.S. 478, 496-97 (1986); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). The Court thus finds that Orta's claims are procedurally barred from habeas review.

**IV. Conclusion**

For the reasons stated above, Orta's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because the petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

appealability.  See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                        S/Michael A. Telesca

                              _____
                                  MICHAEL A. TELESCA
                              United States District Judge

Dated: July 30, 2009
      Rochester, New York